# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ARTHUR L. JONES,

   Plaintiff,

v.               Case No. 04-C-928

CITY OF MILWAUKEE,
JOHN O. NORQUIST,
ROBERT J. WELCH,
CARLA Y. CROSS,
ERIC MANDEL JOHNSON,
LEONARD J. SOBCZAK,
ERNESTO A. BACA,

   Defendants.

## OPINION AND ORDER

  Arthur Jones, the former police chief of Milwaukee, Wisconsin, is suing the City of Milwaukee, former mayor John Norquist,[1] and five former and present members of Milwaukee's Fire and Police Commission for retaliating against him for filing an employment discrimination complaint. Jones says that the Defendants retaliated by failing to select him from a field of applicants for a second term as chief. He is seeking compensatory and punitive damages in excess of two million dollars as well as declaratory relief pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. The Defendants have denied liability, and, after the parties completed all discovery, they moved for summary judgment on the grounds that

---

[1]On June 22, 2003, Norquist announced that he would resign as mayor.

no material facts are in dispute and that they are entitled to judgment as a matter of law. See Federal Rule of Civil Procedure 56.

## I. FACTS

The factual background of this action was set forth in the court's Opinion and Order in a companion case:

> Arthur Jones was appointed as the City of Milwaukee's Chief of Police on November 15, 1996. His appointment by the Fire and Police Commission was backed by Defendant John Norquist, who had been elected mayor in 1988. Prior to his appointment as Chief, Jones had served as supervisor of the mayor's security detail. The Fire and Police Commission chose Jones over other candidates. Jones served until his term expired on November 18, 2003.
>
> On June 5, 2002, while still employed as Chief, Jones, who is African American, filed a claim of race discrimination with the Equal Employment Opportunity Commission. After he retired, he added a claim of retaliation and received a right-to-sue letter on April 1, 2004. He filed this federal lawsuit on June 25, 2004.
>
> In his Complaint, Jones claims that in December of 1999, he refused Defendant Norquist's request to persuade a female city employee (Marilyn Figueroa) not to file a sexual harassment claim involving the then-mayor Norquist. Jones alleges that, from that time onward, the mayor, in retaliation, subjected him to public attacks and poor performance reviews. He says that he was harassed and held to standards that were not imposed upon any prior police chiefs (none of whom were African American).
>
> After Norquist was elected to a fourth term on April 4, 2000, he formed the Milwaukee Anti-Crime Commission. Jones was a member as were many community leaders. After the Commission's report was issued, the recommendations were sent to Jones for review. The Defendants say that Jones refused to adopt their recommendation to decentralize authority. Consequently, Jones' performance review for the year 2000, was less than favorable. Nevertheless, he was

> eventually granted a retroactive pay raise. Shortly thereafter, a local newspaper reported that arrests were dropping while Jones' internal investigations of police personnel were increasing. In November of 2000, Norquist presented a program to community groups showing that the violent crime rate in Milwaukee was increasing.
>
> Jones claims that, beginning in 2001, Defendant Robert Welch, who was chairman of the Fire and Police Commission, began to criticize him in the press for such things as his budget and internal investigations. Jones maintains that, contrary to Welch's statements, crime was decreasing in Milwaukee and the department was being operated within its budget. Jones accuses Welch of calling him "Ace," during one heated exchange. Jones regards this word as racially derogatory. He interprets it as referring to the ace of spades. Jones, in turn, called Mayor Norquist "Massa" and called two African American members of the Fire and Police Commission "Uncle Toms."
>
> Eventually, relations among the mayor, members of the Board of Fire and Police Commissioners, and Jones deteriorated to a point where Jones claims that Norquist asked him to quit. In April of 2002, Jones refused to appear for his performance review.

Jones v. Milwaukee, Civil Action No. 4-C-618 (E.D. Wisconsin November 3, 2005) (Opinion and Order granting summary judgment).

Jones filed a complaint with the federal Equal Employment Opportunity Commission (EEOC) on July 5, 2002. The original complaint charged that he had been discriminated against on the basis of race during his tenure as police chief. That charge was later amended to include a charge of retaliation.[2] He filed a second EEOC charge on October 27, 2003, claiming retaliation for the filing of the first charge. He alleged

---

[2] Summary judgment was granted in favor of the Defendants in a lawsuit Jones brought based upon the claims in his first EEOC complaint. See Jones v. City of Milwaukee, Case No. 04-C-618 (E.D. Wis. November 2, 2005) (Opinion and Order).

3

that he had not been chosen for reappointment as police chief because he had filed the discrimination charge.

After four people were murdered in Milwaukee on a single day in November of 2002, the Board issued a directive to Jones to prepare a plan for reducing homicides and gun-related crimes.

On May 6, 2003, Jones filed a complaint in the Circuit Court of Milwaukee County for injunctive relief to require the Fire and Police Commission to conduct its performance evaluation in open session and to be allowed to record the evaluation sessions. After a hearing, the circuit court denied his request for a temporary restraining order and an injunction.

With his seven-year term as police chief coming to an end in November of 2003, Jones applied to be reappointed. Twenty-four other candidates also applied for the position. Eleven candidates were eliminated on the basis of their applications. Along with thirteen other candidates, Jones advanced to the interview stage. After the oral interviews, Jones, along with three others (Attorney D. Michael Guerin, a former police officer, Deputy Inspector Ray Sucik, and Captain Glenn Frankovis), were eliminated. Defendant Welch testified at his deposition that he did not want to reappoint Jones because he wanted the police department to go in a "new direction," particularly in regard to internal morale and administration. See Deposition of Welch at 94-99. Defendant Cross testified that Jones submitted a "really poor application" without details and without answering the questions asked. See Deposition of Carla Cross at 251-52.

The remaining ten candidates underwent psychological testing, after which five more candidates were eliminated and another withdrew. The four finalists participated in a public forum. Background investigations and final interviews were conducted. On October 16, 2003, the Commission nominated Captain Nanette Hagerty to be the new chief of police. She was sworn in on November 18, 2003.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. See Celotex Corp. v. Catrett, 477 U.S. 317, 3237, 106 S.Ct. 2548, 91 L.Ed.2d 264 (1986). See also United Association of Black Landscapers v. City of Milwaukee, 916 F.2d 1261, 1267-68 (7th Cir. 1990), cert. denied, 499 U.S. 923 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Federal Rule of Civil Procedure 56(c).

Once parties have made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists

5

whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 997 (7th Cir. 1996), cert. denied, 520 U.S. 1116, (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See Celotex, 477 U.S. at 322-23; Hostetler v. Quality Dining, Inc., 218 F.3d 798, 806 (7th Cir. 2000); Shields Enterprises, Inc. v. First Chicago Corporation, 975 F.2d 1290, 1294 (7th Cir, 1992).

In evaluating a motion for summary judgment, the court must draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. See Whittaker v. Northern Illinois University, 424 F.3d 640 (7th Cir. 2005); Estate of Cole v. Fromm, 94 F.3d 254, 257 (7th Cir. 1996), cert. denied, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. See Anderson, 477 U.S. at 248; Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003); JPM Inc. v. John Deere Industrial

6

Equipment Co., 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. See Clifton v. Schafer, 969 F.2d 278, 281 (7th Cir. 1992). If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving parties. See Ortiz v. John O. Butler Co., 94 F.3d 1121, 1124 (7th Cir. 1996), cert. denied, 519 U.S. 1115 (1997).

### III. DISCUSSION AND DECISION

#### A. FIRST AMENDMENT

Jones is seeking relief pursuant to 42 U.S.C. § 1983 because he says that the Defendants retaliated against him for exercising his First Amendment rights by filing an EEOC charge.

The Seventh Circuit has explained that:

> A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." City of San Diego v. Roe, --- U.S. ----, ----, 125 S.Ct. 521, 523, 160 L.Ed.2d 410(2004). Because "the government as an employer has an interest in conducting its operations as effectively as possible," however, "public employees do not have an unfettered right to express themselves on matters related to their jobs, and courts must give due weight to the government's interest in efficient employment decision making when evaluating retaliation claims." Brooks v. Univ. of Wis. Bd. of Regents, 406 F.3d 476, 479 (7th Cir.2005) (citing Cygan v. Wis. Dep't of Corr., 388 F.3d 1092, 1098(7th Cir.2004); Waters v. Churchill, 511 U.S. 661, 675, 114S.Ct. 1878, 128 L.Ed.2d 686 (1994)). To establish a claim of First Amendment retaliation, a plaintiff must prove "that the speech in question is constitutionally protected and that it was a substantial, or motivating, factor in the employer's retaliatory actions." Brooks, 406 F.3d at 479. "If the plaintiff establishes these elements, the burden

7

> shifts to the government to prove that it would have taken the same action in the absence of the protected speech." Id. . . .
>
> In determining whether a government employee's speech is constitutionally protected, we apply the two-step Connick-Pickering test. Cygan, 388 F.3d at 1099 (citing Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75L.Ed.2d 708 (1983); Pickering v. Bd. of Educ. of Township High Sch. Dist., 205, 391 U.S. 563, 88 S.Ct. 1731, 20L.Ed.2d 811 (1968)). First, under Connick, we must determine whether the employee spoke "as a citizen upon matters of public concern." Connick, 461 U.S. at 147, 103S.Ct. 1684; see also Cygan, 388 F.3d at 1099. In making this determination, we examine "the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. 1684. Second, under Pickering, we balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at568, 88 S.Ct. 1731; see also Cygan, 388 F.3d at 1099.

Schad v. Jones, 415 F.3d 671 (7th Cir. 2005), petition for cert. filed, (U.S. October 10, 2005) (No. 05-469).

On October 12, 2005, the United States Supreme Court heard arguments in the case of Ceballos v, Garcetti , 361 F.3d 1168 (9th Cir. 2004), cert. granted, 125S. Ct. 1395 (2005). The Court has been asked to decide whether a public employee's purely job related speech, expressed strictly pursuant to the duties of employment, is cloaked with First Amendment protection simply because it touches on a matter of public concern, or whether First Amendment protection also requires the speech to be engaged in as a citizen. See Garcetti v. Ceballos, 2004 WL 2260964 (U.S. October 1,2004) (No. 04-473) (petition for writ of certiorari). There is a split among the circuits on this issue, with some circuits, including the Seventh Circuit, ruling that a plaintiff must prove that

8

he or she was speaking as a citizen, not merely as an employee. See, e.g., Schad v. Jones, 415 F.3d 671 (7th Cir. 2005), petition for cert. filed (U.S. October 10, 2005) (No. 05-469) (in which Defendant Arthur Jones (the Plaintiff in the instant case) takes the position that a public employee plaintiff must prove that he or she was speaking as a citizen, not merely as an employee). Other circuits, such as the Ninth in the Ceballos case, do not require a plaintiff to prove that element. Rather, those courts focus on whether the public employee's speech would be of relevance to the public's evaluation of the performance of governmental agencies. See, e.g., Ceballos v. Garcetti, 361 F.3d 1165 (9th Cir. 2004), cert. granted, 125 S. Ct. 1395 (2005).

Until the United States Supreme Court has ruled, the court must follow precedent in the Seventh Circuit. The Seventh Circuit has ruled that an EEOC charge is not constitutionally protected speech if the Plaintiff's concerns are primarily personal and he does not seek to remedy systemic harm. See generally Zorzi v. County of Putnam, 30 F.3d 885 (7th Cir. 1994). In this case, Jones sought redress for name calling and for what he regarded as discriminatory criticism of his abilities as police chief. He did not seek to remedy any systemic wrong on behalf of others. Therefore, his EEOC charge is not constitutionally protected speech and the court will grant summary judgment in favor of the Defendants on Jones' First Amendment retaliation claim.

### B. TITLE VII RETALIATION

The remaining claim brought by Jones is that the Defendants retaliated against him for engaging in conduct protected by Title VII. This conduct included the filing of his discrimination and retaliation complaints with the EEOC in 2002. He claims

9

that the Defendants retaliated by refusing to reappoint him as police chief in the fall of 2003.

A plaintiff can establish retaliation either by the direct method or by the indirect method. The direct method requires a plaintiff to show that: (1) he engaged in protected activity; (3) he suffered an adverse employment action; and (3) the two were causally linked. See Sitar v. Indiana Department of Transportation, 344 F.3d 720, 728 (7th Cir. 2003). Although the Plaintiff in the instant case argues that he has direct evidence of retaliation, the court finds nothing in the record which would directly establish the third element by causally linking the filing of the EEOC Complaints with the failure to reappoint Jones.

In the absence of direct evidence, the Plaintiff must rely on the indirect method of establishing a prima facie case. Under the indirect method, a plaintiff in a failure to reappoint case has to show that: (1) he engaged in statutorily protected activity; (2) he was as qualified for reappointment as the other candidates for the job; (3) he was not reappointed; and (4) another candidate who had not engaged in protected activity was hired. See Id.

Jones has demonstrated that he engaged in protected activity by filing his EEOC charges and that he was not reappointed. As for qualifications, Jones and his expert maintain that he was the most qualified of the twenty-five candidates. The Defendants do not dispute Jones' proposed fact that the other twenty-four candidates had not engaged in activities protected by Title VII.

Seeming to concede that Jones has established his prima facie case of retaliation, the Defendants argue that they had legitimate, non-retaliatory reasons for not reappointing Jones. Defendant Welch explains that the Commissioners wanted a fresh approach to internal administration of the police department and that, at his oral interview, Jones indicated that he was satisfied with the status quo. This evidence stands unrebutted. Nothing the Plaintiff has submitted for the record raises the inference that the reasons put forth by the Defendants for not appointing Jones are merely a pretext for retaliation.[3] Consequently, the Defendants are entitled to summary judgment on this Title VII claim. See Hudson v. Chicago Transit Authority, 375 F.3d 552, 559-60 (7th Cir. 2004) ("if the employer presents unrebutted evidence of a non-invidious reason for the employment action at issue, the employer is entitled to summary judgment unless there is a material issue of fact as to whether the employer's non-invidious reason is pretext for retaliation").

## ORDER

For the reasons explained above, the court ORDERS that the "Defendants' Motion for Summary Judgment" (filed July 1, 2005) IS GRANTED. See Federal Rule of Civil Procedure 56.

IT IS FURTHER ORDERED that this action is dismissed upon its merits.

---

[3]Jones has not demonstrated that his credentials were so superior to the credentials of Nanette Hegerty, the person selected for the job, that no reasonable person in the exercise of impartial judgment could have chosen Hegerty over Jones for the police chief job. See Millbrook v. IBP, Inc., 280 F.3d 1169, 1180-81 (7th Cir.) cert. denied, 537 U.S. 884 (2002). Only a showing of vastly superior qualifications would raise an inference of retaliation. See Id.

IT IS FURTHER ORDERED that the Clerk of Court shall enter a final judgment as a separate document. See Federal Rule of Civil Procedure 58. This judgment shall provide that:

> This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been hear and a decision having been rendered,
>
> IT IS ORDERED AND ADJUDGED that Plaintiff Arthur L. Jones take nothing and that this action is dismissed upon its merits and that the Defendants City of Milwaukee, John O. Norquist, Robert J. Welch, Carla Y. Cross, Eric Mandel Johnson, Leonard J. Sobczak, and Ernesto A. Baca recover of the Plaintiff their costs of this action.
>
> Done and Ordered in Chambers at the United States Courthouse,

Milwaukee, Wisconsin, this 1st day of December, 2005.

                                          s/ Thomas J. Curran
                                          THOMAS J. CURRAN
                                          United States District Judge